# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | | |
|---|---|---|
| **JOEY BANKS**<br>**L.A. DOC # 485746** | * | **CIVIL ACTION NO. 17-1342** |
| **VERSUS** | * | **CHIEF JUDGE S. MAURICE HICKS, JR.** |
| **DARREL VANNOY** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Petitioner Joey Banks, an inmate in the custody of Louisiana's Department of Corrections, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on October 19, 2017.[1] [doc. # 1]. Petitioner attacks his 2013 convictions for second degree kidnapping, first degree robbery, and aggravated second degree battery, and his sentences imposed thereon by Louisiana's 5th Judicial District Court, Parish of Richland. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court.

## Background[2]

Petitioner and his brother, Leonard Banks, were charged with second degree kidnapping, first degree robbery, and aggravated second degree battery, for the kidnapping, torturing, and

---

[1] Banks filed a duplicate petition on November 8, 2017. [doc. # 4].

[2] The underlying facts in this case have been set forth by the Louisiana Second Circuit Court of Appeal, *State v. Banks*, 48,868 (La. App. 2 Cir. 2/26/14), 134 So. 3d 1235, 1238-42. Accordingly, only the history relevant to the pending petition is included.

robbing of Shedrick Dorsey on February 26-27, 2012.[3] Their joint trial began on May 6, 2013. During voir dire, Leonard Banks pleaded guilty, and the trial court instructed the jury not to infer anything from his absence. On May 9, 2013, the jury found Joey Banks guilty of all three counts. On June 12, 2013, Banks was sentenced to 30 years at hard labor without the benefit of probation, parole or suspension of sentence for the second degree kidnapping charge, 30 years at hard labor without the benefit of probation, parole or suspension of sentence for the first degree robbery charge, and 10 years at hard labor for the aggravated second degree battery charge, with all three sentences to run consecutively to each other. Banks was also credited for time served. *Banks*, 134 So. 3d at 1238-42.

Banks filed a direct appeal in the Second Circuit Court of Appeal, raising three assignments of error: (1) insufficient evidence to support the convictions; (2) the trial court erred in denying his motion to quash the jury venire or, alternatively, in failing to grant a mistrial when his codefendant pleaded guilty on the third day of voir dire; and (3) excessive sentence. *Id.* at 1242-48. On February 26, 2014, the Second Circuit affirmed Banks' convictions and sentences. *Id.* at 1248. The Louisiana Supreme Court denied Banks' subsequent application for writ of certiorari on December 8, 2014. *State v. Banks*, 2014-0671 (La. 12/8/14), 153 So. 3d 432. Banks did not file a petition for certiorari in the United States Supreme Court. [doc. # 1 ¶ 9(h)].

On September 25, 2015, Banks filed an application for post-conviction relief in the state district court, raising seven claims for relief. [doc. # 12-6 at 25-57]. The court denied his application on October 21, 2015. (*Id.* at 72-80). The Second Circuit Court of Appeal denied his

---

[3] William Johnson, Robert Banks, Otis Banks and Anthony Johnson were also charged with crimes for their involvement in this incident.

application on January 28, 2016. (*Id.* at 97). Banks sought a supervisory and/or remedial writ, which the Louisiana Supreme Court denied on August 4, 2017. *State ex rel. Banks v. State*, 2016-0348 (La. 8/4/17), 223 So. 3d 1152. In its per curiam opinion, the Louisiana Supreme Court found that Banks had fully litigated his application for post-conviction relief in state court and exhausted his right to state collateral review. *Id.*

On October 19, 2017, Banks filed the instant federal habeas corpus petition raising the same the assignments of error he alleged on direct appeal and the same claims for relief as he did in his state district court brief: (1) insufficient evidence to support the convictions; (2) the trial court erred in denying his motion to quash the jury venire, or alternatively, in failing to grant a mistrial when his codefendant pled guilty on the third day of voir dire; (3) excessive sentence; (4) the trial court's denial of his request for a continuance violated his right to a fair trial; (5) the trial court erred in failing to charge the jury concerning circumstantial evidence; and (7) his trial counsel rendered ineffective assistance in failing to (a) object to the trial court's erroneous instruction on the law of principals; (b) request a mistrial or object to the State not giving notice to introduce an inculpatory statement that was allegedly made by Petitioner; (c) adequately advise Petitioner regarding the State's offer of a plea bargain; (d) object to the trial court's erroneous jury instruction that lacked the element of criminal intent; and (e) object to the trial court's failure to charge the jury on circumstantial evidence.[4] (*See* Memorandum in Support ("Mem."), [doc. # 1-3, 1-4]). The State filed its response on March 12, 2018. [doc. # 12]. This matter is now ripe.

---

[4] For ease of review, this court has re-ordered Petitioner's claims. Further, Petitioner outlines each of his ineffective assistance of counsel claims in separate sections of his brief, and then repeats the allegations in the section with the heading "Specification of Claim No. 7." (Mem. at 39-40). This Report and Recommendation addresses each of Petitioner's claims, and it is unnecessary to make additional findings regarding his duplicative claims.

**Standard of Review**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C.

§ 2254, governs habeas corpus relief of a state prisoner. The AEDPA limits how a federal court

may consider habeas claims. After a state court has adjudicated a prisoner's claims on the merits,

federal review "is limited to the record that was before the state court." *Cullen v. Pinholster*, 563

U.S. 170, 181 (2011). An application for a writ of habeas corpus should be granted if the

petitioner shows that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a

conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the

state court decides a case differently than . . . [the Supreme Court] has on a set of materially

indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "The 'contrary to' requirement refers to

holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the

relevant state-court decision." *Id.* at 740 (citations and internal quotations omitted). Under the

"unreasonable application" clause, a federal habeas court may grant the writ only if the state court

"identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but

unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal

courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). AEDPA has put into place a deferential standard of review, and a federal court must defer to a state court adjudication on the merits. *Valdez v. Cockrell*, 274 F.3d 941, 950 (5th Cir. 2001). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

<u>Discussion</u>

## I.    Claim One: Insufficient Evidence

Banks first claims that the jury erred in convicting him because the evidence presented by the State was insufficient to support his convictions. (Mem. at 3). He claims that the State's case was "based almost entirely on the self-serving testimony given by three of his co-defendants who admitted that they had been charged with the same crimes," as well as on testimony from "the alleged victim of the crime," Shedrick Dorsey. (*Id.* at 13). According to Banks, their testimony differed "on practically every 'fact' of the alleged crime," so that the state was unable to satisfy its burden of proof. (*Id.*). Banks submits that based on Dorsey's testimony, there was no evidence that Banks had a gun or that he robbed Dorsey. (*Id.* at 16). The State responds that the evidence presented at trial supports Banks' convictions. (Memorandum in Opposition ("Opp. Mem.") at 10-12, [doc. # 12-1]).

Banks argued this same claim on direct appeal in the state court, and the Second Circuit Court of Appeal affirmed his convictions and sentences. *Banks*, 134 So. 3d 1235. A state court's

determination that there is sufficient evidence to support a conviction will not be overturned unless it was contrary to or involves an unreasonable application of clearly established federal law. *Williams v. Puckett*, 283 F.3d 272, 277 (5th Cir. 2002). The clearly established law regarding the sufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 277-78 (5th Cir. 2002) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This inquiry "does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993). Thus, a court "may find the evidence sufficient to support a conviction even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

Banks was charged with three crimes under Louisiana law, which are defined as follows:

A. Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is:
    (1) Used as a shield or hostage;
    (2) Used to facilitate the commission of a felony or the flight after an attempt to commit or the commission of a felony;
    (3) Physically injured or sexually abused;
    (4) Imprisoned or kidnapped for seventy-two or more hours, except as provided in R.S. 14:45(A)(4) or (5); or
    (5) Imprisoned or kidnapped when the offender is armed with a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon.
B. For purposes of this Section, kidnapping is:
    (1) The forcible seizing and carrying of any person from one place to another; or
    (2) The enticing or persuading of any person to go from one place to another; or
    (3) The imprisoning or forcible secreting of any person.

La. R.S. 14:44.1.

> First degree robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon.

La. R.S. 14:64.1(A).

> A. Aggravated second degree battery is a battery committed with a dangerous weapon when the offender intentionally inflicts serious bodily injury.
> B. For purposes of this Section, the following words shall have the following meanings:
> . . . .
>> (3) "Serious bodily injury" means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.

La. R.S. 14:34.7. Banks claims the State did not meet its burden of proof for any of these crimes because the witnesses contradicted each other in relaying the major facts of the incident. (Mem. at 16-17).

On appeal, the Second Circuit applied the *Jackson* standard in finding that the evidence presented at trial supported Banks' convictions. The court relayed the following:

> The facts presented at trial demonstrate that Defendant was a principal in the commission of second degree kidnapping. Defendant fired a gun, i.e., a dangerous weapon, and then chased Dorsey while still armed. Defendant and Leonard Banks battered Dorsey in the face until he was bleeding and then took him by each arm and forced him into their vehicle and took him to 408 Oak Street. Defendant forcibly seized and carried Dorsey from 105 Madeline Street to 408 Oak Street while Dorsey was physically injured and Defendant was armed with a dangerous weapon, i.e., a gun, or led Dorsey to reasonably believe he was armed with a dangerous weapon. Therefore, the state established that Defendant committed the crime of second degree kidnapping three different ways. Viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have found that the state presented sufficient evidence at trial to establish the essential elements of second degree kidnapping beyond a reasonable doubt.
> . . . .
> The facts presented at trial establish that Defendant was a principal in the commission of first degree robbery. At trial, the state presented evidence that things of value, i.e., shoes,

money (approximately $100) and a phone, were taken from Dorsey by force or intimidation, i.e., Dorsey had been kidnapped and was being beaten and burned, while the offender led Dorsey to reasonably believe he was armed with a dangerous weapon. There are two dangerous weapons in this case, the gun fired and carried by Defendant and the iron wielded by Otis Banks. Viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have found that the state presented sufficient evidence at trial to establish the essential elements of first degree robbery beyond a reasonable doubt.

. . . .

The facts presented at trial demonstrate that Defendant was a principal in the commission of aggravated second degree battery. Defendant drove Dorsey to the location of the battery at 408 Oak Street. Dorsey, Robert Banks, William Johnson and Anthony Johnson all testified that Defendant was present at 408 Oak Street while Dorsey was punched, kicked and burned multiple times with an iron, i.e., a dangerous weapon. Dorsey suffered serious bodily injury to his arms and buttocks in that his skin turned pink, peeled off and oozed as a result of the burning. These injuries caused extreme physical pain and protracted and obvious disfigurement. Photographs taken of Dorsey's injuries several days after the burning were shown to the jury, and Dorsey also showed the jury the scars that remained on his arms. Viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have found that the state presented sufficient evidence at trial to establish the essential elements of aggravated second degree battery beyond a reasonable doubt.

*Banks*, 134 So. 3d at 1243-45.

The undersigned has reviewed the transcript of Banks' trial and finds that the state court did not unreasonably apply the *Jackson* standard. Dorsey testified that on February 26, 2012, he was outside his friend's house with a few people when Banks and five or six other men headed towards them. After someone shouted that Banks had a gun, Dorsey began to run away and heard gunshots. As Dorsey tried to jump a fence, someone grabbed his shirt and punched him in the face. He was then dragged into a car and driven to another house. At the house, Dorsey was beaten, burned with a hot iron, and made to eat dog food, and his money, shoes, and phone were taken from him.[5] Dorsey was unable to identify who grabbed him or stole from him, but he

---

[5] Dorsey's phone was later returned to him. [doc. # 12-4 at 594].

identified Banks as the driver of the car and one of the people at the house during the incident. Dorsey also testified that during this incident he thought his attackers were going to kill him. [doc. # 12-4 at 583-94]. William Johnson and Robert Banks, two of Banks' codefendants, gave similar testimony. They testified that Joey Banks was the one who dragged Dorsey to the car and drove him to the house and that he was present when Dorsey was beaten and burned. (*Id.* at 700-06, 731-42). They also testified that they saw Joey Banks with a gun, and Robert Banks testified that he saw Joey Banks shooting it. (*Id.* at 702, 733-36).

The defense presented witnesses who testified that Joey Banks was not present during the kidnapping and beating of Dorsey. [doc. # 12-5 at 802-05, 808-10, 821-24, 831-33]. Banks also testified and stated he was not involved in the kidnapping of Dorsey and was not at the house when Dorsey was taken there. (*Id.* at 849-54).

Despite Banks' contention that the State's witnesses gave contradictory testimony, they all agreed that Banks was present and involved in the kidnapping and torture of Dorsey. Based on the foregoing, a reasonable jury could have determined that the testimony of the State's witnesses was credible and found that the State proved each element of each crime that Banks was charged with. Thus, in affirming Banks' convictions, the state court did not unreasonably apply clearly established federal law.

Accordingly, this claim should be **DISMISSED**.

## II.    Claim Two: Motion to Quash Jury Venire

Banks next claims that the trial court erred as matter of law in denying the defense's motion to quash the jury venire, or alternatively, in failing to grant a mistrial, when his codefendant pleaded guilty during voir dire. (Mem. at 3). During jury selection, Banks'

9

codefendant, Leonard Banks, pleaded guilty. The plea was taken outside of the presence of the jury, and when the jury returned, the trial court instructed:

> Let me say to the members here and the members out there, you'll notice there's one defendant not here or the attorney. You are to make no inference or assumption as to why the co-defendant is no longer present in this proceeding, you're to only focus on the charges against this defendant, and the absence of the co-defendant is not to be considered by you in any manner in this proceeding.

[doc. # 12-4 at 517]. After the conclusion of jury selection, Banks' counsel moved to quash the venire on the grounds that Leonard Banks' plea of guilty in the middle of jury selection would taint the jury. (*Id.* at 562). The State responded that the plea did not provide a basis for a mistrial and the court simply needed to provide the jury with an instruction, which is what the court did. (*Id.* at 562-63). The trial court then denied the motion for a mistrial or to quash the venire.[6] (*Id.* at 563).

Banks claims that the trial court's instructions were insufficient to overcome the prejudice that resulted from Leonard Banks' absence. He claims that the jury would have come to the conclusion that Leonard Banks pleaded guilty and would therefore conclude that Joey Banks was guilty as well. Banks claims that it would have been preferable for the trial to tell the jury that the codefendant had pleaded guilty and then allow counsel to voir dire the jury on whether they could evaluate the evidence fairly as to Banks. (Mem. at 18-20).

The State responds that the trial court's instructions were proper, the cases Banks cites support the trial court's decision to deny Banks' motion, and there is no evidence that the jury even knew Leonard Banks had pleaded guilty, and even if they did, it did not have an impact given that three other codefendants had also pleaded guilty. (Opp. Mem. at 21-23).

---

[6] The trial court treated the motion to quash as a request for a mistrial. [doc. # 12-4 at 563].

Banks raised this claim on direct appeal, and the Second Circuit found that Banks did not demonstrate he was entitled to a mistrial under Louisiana law or that he was prejudiced by the co-defendant's absence or the trial court's instructions. *Banks*, 134 So. 3d at 1246. To the extent that Banks is requesting a review of the denial of his motion to quash or grant a mistrial under state law, "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "Federal habeas corpus review is limited to errors of constitutional dimension, and federal courts do not sit to review the mere admissibility of evidence under state law." *Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir. 1998). A trial court's denial of a motion to quash or for a mistrial implicates the United States Constitution only if the error "is so extreme that it constitute[s] denial of fundamental fairness under the Due Process Clause." *Id.* at 224. (citations omitted). To obtain relief, Banks must show that the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Robertson v. Cain*, 324 F.3d 297, 304 (5th Cir. 2003) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).[7]

In this case, Banks has not established that the denial of his motion to quash or for a mistrial made his trial fundamentally unfair. The jury was not present when Leonard Banks pleaded guilty, and the trial court provided sufficient instruction that the jury make no inference in the face of Leonard Banks' absence. Given the presumption that "jurors follow the instructions they are given," *United States v. Stanford*, 823 F.3d 814, 834 (5th Cir. 2016), it is presumed that the jury focused on the charges against Joey Banks and did not consider the absence of Leonard Banks, as instructed. Moreover, in light of the evidence against presented against Banks, as

---

[7] "[I]n cases governed by AEDPA, federal habeas courts should continue to analyze the harmlessness of all state court decisions involving a constitutional 'trial' error according to the *Brecht* standard." *Robertson*, 324 F.3d at 306-07.

detailed above, *see supra* Part I, the trial court's decision not to grant the motion to quash or for a mistrial did not have a substantial and injurious effect on the jury's verdict.

Accordingly, this claim should be **DISMISSED**.

### III.    Claim Three: Excessive Sentence

Banks claims that the trial court erred as a matter of law in rendering an excessive sentence in this matter. (Mem. at 3). Specifically, he claims his consecutive sentences of  30 years at hard labor without the benefit of probation, parole or suspension of sentence for the second degree kidnapping charge, 30 years at hard labor without the benefit of probation, parole or suspension of sentence for the first degree robbery charge, and 10 years at hard labor for the aggravated second degree battery charge, are excessive because his total sentence is akin to a life sentence. (*Id.* at 21-22). Further, he claims the sentences are excessive based on the fact that Dorsey did not identify Banks as the one who grabbed him, put him in the car, or took his belongings, and Dorsey testified that Banks did not burn him or force him to eat dog food. (*Id.* at 22). Banks also claims he should have received concurrent, and not consecutive sentences. (*Id.* at 21).

The State responds that the trial court believed the facts of the case and the "deliberate cruelty displayed to the victim," as well as Banks' "extensive criminal and social history," justified the sentence. (Opp. Mem. at 24-25). Further, the State claims the sentence is supported by Louisiana law and the evidence, and this claim "is not cognizable on federal habeas review." (*Id.* at 25).

To the extent that Banks is arguing his sentences are excessive under Louisiana law, such a claim is not cognizable in this federal proceeding. *Pierre v. Radar*, No. CIV.A. 11-55, 2012 WL

12

3026790, at *6 (E.D. La. June 18, 2012) (collecting cases). Federal habeas corpus relief is available only to remedy violations of the Unites States Constitution and federal law. *Id.* at *7. To the extent that Banks is claiming his sentences are excessive under the federal Constitution, specifically under the Eighth Amendment's prohibition of cruel and unusual punishment, his claim lacks merit.

The Eighth Amendment prohibits "extreme sentences that are grossly disproportionate to the crime." *Graham v. Fla.*, 560 U.S. 48, 60 (2010) (citations and quotations omitted). To determine whether a sentence is grossly disproportionate, the court first compares "the gravity of the offense and the severity of the sentence"; if this threshold comparison "leads to an inference of gross disproportionality, the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Id.* If this comparative analysis validates the initial finding of gross proportionality, then "the sentence is cruel and unusual." *Id.*

According to the transcript of Banks' sentencing, the trial court (1) noted that the evidence supported Banks' significant involvement in this incident: Banks shot a gun, robbed Dorsey, and kidnapped Dorsey and drove him to the house where he was tortured; (2) noted that Dorsey's mother provided a statement requesting the maximum sentence imposed because of the effects the incident had on her son; (3) outlined Banks' extensive criminal history involving numerous felonies and misdemeanors; and (4) discussed his social history including school suspensions. The trial court stated it reviewed the pre-sentence investigation report, all aggravating and mitigating factors, and then sentenced Banks below the statutory maximum for each crime. [doc. # 12-5 at 934-46].

13

Banks raised this claim on direct appeal. The appellate court rejected Banks' claim that his sentences were grossly disproportionate to the severity of the crime, reasoning that

> All of the sentences imposed are within statutory bounds and none are the statutory maximum. Based on the law and the facts of the case, the sentences are not out of proportion to the severity of these crimes and do not shock the sense of justice. . . .
>
> When a defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively.
> . . . .
> Although the trial court did not articulate specific reasons for consecutive sentences, its detailed reasons for sentencing and the record itself provide an adequate factual basis to support consecutive sentences. The trial court noted Defendant's "terrible" criminal history and that he is a third felony offender. The trial court stated that Defendant is someone "that needs to be incarcerated for a very long time." The trial court also detailed the facts of this case and emphasized Defendant's "participation in this horrible crime." We find, therefore, that the trial court did not err in ordering consecutive sentences.

*Banks*, 134 So. 3d at 1247-48.

Upon review of the sentencing transcript and the Second Circuit's opinion, the undersigned finds that Banks' three consecutive sentences, totaling seventy years, is not grossly disproportionate in light of the severity of his crime. Banks was involved in the kidnapping and torture of another person, considered by the trial court to be "one of the most horrible crimes [it has] ever seen." [doc. # 12-5 at 943-44]. The gravity of the crime is not disproportional to Banks' sentence, especially given his extensive criminal history and apparent lack of respect for the law. Therefore, the state court's rejection of Banks' excessive sentence claim was not contrary to, or an unreasonable application of, clearly established federal law.

Accordingly, this claim should be **DISMISSED**.

## IV. Claim Four: Denial of Continuance

14

Banks claims that the trial court violated his right to a fair trial under the Sixth Amendment by denying his motion for a continuance. (Mem. at 4). On April 25, 2012, Banks and his codefendants were charged with aggravated kidnapping, conspiracy to commit aggravated kidnapping, aggravated second degree battery, and conspiracy to commit second degree battery. On September 18, 2012, the State amended the charges against Banks to add first degree robbery and conspiracy to commit first degree robbery. Banks pleaded not guilty to the charges on September 28, 2012. On April 15, 2013, the State filed another amended bill of information to charge defendants with aggravated kidnapping, conspiracy to commit aggravated kidnapping, first degree robbery, conspiracy to commit first degree robbery, aggravated second degree battery, and conspiracy to commit second degree battery. On May 3, 2013, the State amended the bill of information again to charge the defendants with second degree kidnapping, first degree robbery, and aggravated second degree battery. *See Banks*, 134 So. 3d at 1238-39. At the beginning of trial, the defense moved for a continuance on the grounds that the amended bill of information contained a new charge of robbery only a few days before trial, which left the defense unable to properly prepare. [doc. # 12-3 at 492-93]. The trial court denied the motion, finding that the amended bill of information merely reduced the charges against the defendants and did not cause any prejudice. (*Id.* at 497-98).

On appeal, Banks claims that the trial court abused its discretion in denying the motion for a continuance, and as a result of the denial, Banks was prejudiced in the preparation of his defense and was unable to prepare a defense to the robbery charge. (Mem. at 34). The State responds that Banks has failed to state a specific allegation as to how he was prejudiced or show that the trial court's denial of his motion was an abuse of discretion. (Opp. Mem. at 32-33).

"When a denial of a continuance is the basis for a habeas petition, the petitioner must show an abuse of discretion that was so arbitrary and fundamentally unfair as to violate the constitutional principles of due process." *Newton v. Dretke*, 371 F.3d 250, 255 (5th Cir. 2004). To obtain federal habeas corpus relief, Banks must show that the failure to grant the continuance harmed his defense. *See id.* There is no mechanical test for determining whether a denial of a continuance violates due process, but the answer depends on the circumstances present in the case. *Schrader v. Whitley*, 904 F.2d 282, 288 (5th Cir. 1990).

Here, Banks' claim that he did not have adequate time to prepare his defense lacks merit. The State charged Banks with first degree robbery in the amended bill of information dated September 18, 2012, which Banks pleaded not guilty to on September 28, 2012. The State did not charge Banks with anything new in the bill of information dated May 3, 2013; the State merely reduced some of the charges. The amended charges were based on the same facts and the same incident as the original charges, and the first degree robbery charge remained unchanged. Banks had plenty of notice of the charges filed against him—more than seven months—and had adequate time to prepare his defense. He has not shown that the trial court's denial of his motion to continue was fundamentally unfair or harmed his defense.

Accordingly, this claim should be **DISMISSED**.

## V.    Claim Five: Jury Instructions Concerning Circumstantial Evidence

Banks claims the trial court violated his Fourteenth Amendment right to due process when it failed to charge the jury on circumstantial evidence. (Mem. at 4). Specifically, he claims the trial court erred in failing to distinguish between situations in which all of the evidence presented is circumstantial, and situations in which the evidence is both direct and circumstantial,

as in this case. (*Id.* at 37-38). He claims the trial court was not clear that the State bears the burden of proving each element of the crime beyond a reasonable doubt even when circumstantial evidence is involved, which "undermine[d] confidence in the outcome of his trial." (*Id.* at 38-39).[8]

"Improper jury instructions in state criminal trials do not generally form the basis for federal habeas relief." *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002). In examining habeas claims on the basis of improper jury instructions, the inquiry is "whether the failure to give an instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 764-65 (citations and quotations omitted). Further, even if an instruction is erroneous, relief will not be granted unless the error is not harmless, meaning it had "substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 765 (quoting *Brecht*, 507 U.S. at 623).

The undersigned has reviewed the jury charge, which provides in pertinent part:

Evidence is either direct or circumstantial. Direct evidence is evidence which if believed proves a fact. . . . Circumstantial or indirect evidence is evidence which if believed proves a fact and from that fact you may logically and reasonably conclude that another fact exists. . . . A person may be convicted solely on circumstantial evidence, however you cannot find the defendant guilty solely on circumstantial evidence unless the facts proved by the evidence exclude every reasonable hypothesis or explanation or possibility of innocence.

[doc. # 12-5 at 909-10]. Although the trial court did not explain the State's burden of proof at this point, it did multiple times elsewhere in the jury instruction. The trial court clearly instructed that the "defendant is presumed to be innocent until and if each element of the crime necessary to

---

[8] The State treated this claim as alleging ineffective assistance of counsel, and not as a trial court error. Petitioner claims it is both, and the ineffective assistance of counsel claim is discussed below, *infra* Part VI.E.

constitute his guilt is proven beyond a reasonable doubt," the State bears the burden of proof, and the defendant is not required to prove his innocence. (*Id.* at 906). The trial court reiterated the reasonable doubt standard when it outlined the elements of each crime Banks was charged with. (S*ee id.* at 911-18). Banks has not shown that any portion of the instructions is an incorrect statement of law or that the trial court relieved the State of any burden of proof. Thus, Banks cannot show the jury instructions violated due process.

Accordingly, this claim should be **DISMISSED**.

## VI.    Claim Six: Ineffective Assistance of Counsel

Banks raises five allegations of ineffective assistance of counsel. To prevail on an ineffective assistance claim, a petitioner (1) "must show that counsel's performance was deficient," and (2) "that the deficient performance prejudiced [him]." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to prove either prong defeats the claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998). A court need not analyze the prongs of this test in any particular order or even address both prongs if the defendant fails to make a sufficient showing on one. *Strickland*, 466 U.S. at 697. Further, "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green*, 160 F.3d at 1042.

To satisfy the first prong, Banks must prove his counsel's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In applying the first prong, federal courts presume counsel has provided competent professional assistance. *Id.* at 689-90. A court deciding an ineffectiveness claim must judge the reasonableness of counsel's conduct on the facts of the case, at the time of the conduct, keeping in mind that counsel's function "is to

make the adversarial testing process work in the particular case." *Id.* at 690.

To establish prejudice under the second prong, Banks must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. This requires showing that counsel's actions "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable," *Id.* at 687, and not merely that the outcome would have been different. *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993).

A. Failure to Object to the Trial Court's Erroneous Instruction on the Law of Principals

Banks claims that the trial court's instructions to the jury on the law of principals was erroneous, and his trial counsel was ineffective for failing to object. (Mem. at 23-24). In its jury charge, the trial court provided the law of principals as follows:

> All persons concerned with the commission of a crime are principals and are guilty of the crime charged if whether present or absent they directly commit the act constituting the crime, aid and abet in its commission or directly or indirectly counsel or procure another to commit the crime.

[doc. # 12-5 at 911]. According to Banks, the trial court was required to explain that a principal is "a person who knowingly participate [sic] in the planning or execution of a crime" and "that an individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state." (*Id.* at 24). Further, the trial court failed to explain that "one who aids and abets in the commission of a crime may be charged and convicted with a higher or lower degree of crime." (*Id.*) Banks claims that his trial counsel's failure to object to these erroneous instructions constitutes ineffective assistance of counsel and violates Banks' constitutional rights. (*Id.* at 25).

The State responds that Banks' claim has no merit because the trial court's instructions

19

were in compliance with well established law and not erroneous, and the state courts have already affirmed that Banks was a principal based on his participation in the crimes. (Opp. Mem. at 27). The State also argues that Banks' claim that the trial court failed to instruct the jury regarding aiding and abetting "is simply not true" based on the record. (*Id.* at 28).

"[I]t is a well established proposition that a single jury instruction may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Thacker v. Dretke*, 396 F.3d 607, 615 (5th Cir. 2005) (citations omitted). Upon review of the entire jury charge, Banks has failed to show that the trial court's instructions were erroneous. In addition to an instruction on the law of principals, the trial court instructed the jury regarding mental states and defined both specific intent and general intent. [doc. # 12-5 at 910]. The charge reflects that the trial court gave the jury every possible verdict they could render, including lesser offenses, and provided the necessary elements for each offense. (S*ee id.* at 911-18). At no point did the trial court relieve the State of any burden of proof. Because the jury charge contained the correct statements of law, the trial court's instructions were not erroneous.

"[C]ounsel is not required to make futile motions or objections." *Roberts v. Thaler*, 681 F.3d 597, 611 (5th Cir. 2012). Here, counsel did not render ineffective assistance in choosing not to object, because any objection to a correct statement of law would have been futile. Therefore, trial counsel's performance was not deficient under *Strickland*.

Accordingly, this claim should be **DISMISSED**.

B. Failure to Request a Mistrial or Object to the State not Giving Notice to Introduce Petitioner's Allegedly Inculpatory Statement

Banks claims his trial counsel was ineffective for failing to request a mistrial or object to the State's opening statement whereby the prosecutor stated that during the crime Banks looked

at his codefendant and said "take all his stuff. That ain't exactly how he said it but he said take all his stuff." (Mem. at 26). Banks claims that the statement was an inculpatory statement, which should not have been introduced because the State did not provide Banks with sufficient notice of its intent to introduce the statement as required under La. Code Crim. Proc. art. 768. (*Id.* at 26-27). He claims his trial counsel's failure to object deprived him of his right to a fair trial. (*Id.* at 29).

The State responds that the statement at issue is neither a confession nor an inculpatory statement, but rather a "res gestae statement made by the defendant during the commission of the crime." (Opp. Mem. at 29-30). The rule prohibiting the use of inculpatory statements refers to out of court admissions after the crime has been committed, and not statements during the commission of the crime. (*Id.* at 29). Further, the State maintains that Banks was in no way prejudiced by the statement and that it provided Banks with complete discovery of the States file so that there was ample opportunity for Banks to prepare his defense. (*Id.* at 30). Finally, the State claims that Banks cannot show his counsel was ineffective, and the claim can be dismissed based on the record. (*Id.*)

Banks' claim that the State violated  La. Code Crim. Proc. art. 768 is a state law issue, and not cognizable on federal habeas corpus review. *See Johanson v. Whitley*, 36 F.3d 89 (5th Cir. 1994). To the extent that Banks is arguing the violation of his rights under the United States Constitution, his claim is without merit. In its ruling on Banks' application for post-conviction relief, the state court determined that the statement was not an inculpatory one, but was properly introduced as a statement of a defendant during the commission of a crime. The state court further determined that even if the statement was improper, any error was harmless due to the

significant evidence of Banks' guilt presented at trial. [doc. # 12-6 at 76-77]. Banks has not provided clear and convincing evidence to rebut the state court's presumption, as required under 28 U.S.C. § 2254(e)(1). Given that the statement was properly introduced, any objection by counsel would have been futile, and therefore, not required.

Accordingly, this claim should be **DISMISSED**.

C.    <u>Failure to Adequately Advise Petitioner Regarding the State's Offer of a Plea Bargain</u>

Banks claims his trial counsel misinformed him as to the State's plea offers, which caused him to make an unknowing and unintelligent choice to reject the offers. (Mem. at 29). Banks submits that the trial transcript clearly shows that the trial court never addressed him on the record to determine whether he rejected the plea offers. (*Id.* at 30-31). Banks claims that his trial counsel never discussed the full terms of the plea offers, but only stated that the State offered pleas. (*Id.* at 31). He claims he rejected the State's plea bargain of fifteen years on the kidnapping charge and dismissal of the other two charges in exchange for a guilty plea because his counsel told him that the State could not establish his guilt on any of the charges presented. (*Id.* at 32). Banks requests that the plea offer be re-opened "[i]n the interest of fairness," that his conviction and sentence be reversed and remanded, or, in the alternative, that he be afforded an evidentiary hearing to allow him to develop the material facts of this claim. (*Id.* at 33).

The State responds that it made several plea offers to Banks, which were rejected "based on his claims of 'innocence,' not on the poor advice of his attorney." (Opp. Mem. at 31). Further, there is nothing improper about the fact that the trial court addressed counsel and not Banks in open court, because that is the "system designed to protect the defendant." (*Id.*) The State also notes that Banks does not claim he was unaware of the plea offers, but rejected them because his

attorney told him the State could not prove his guilt. (*Id.*) However, Banks admits he "maintained his innocense throughout the trial" and even took the stand and "protested his innocence" in front of the jury, demonstrating he decided not to take a plea bargain due to his claim of innocence. (*Id.* at 31-32). The State also asserts that there is no possibility of the plea offer being re-extended to Banks. (*Id.* at 32).

"The Sixth Amendment right to the effective assistance of counsel applies at critical stages of the criminal proceedings," including the "decision to plead guilty." *Loden v. McCarty*, 778 F.3d 484, 494 (5th Cir. 2015). When a defendant claims that ineffective assistance led him to reject a plea offer "the defendant will have to show 'a reasonable probability that, but for counsel's errors, he would . . . have pleaded guilty and would [not] have insisted on going to trial.'" *Id.* (quoting *Missouri v. Frye*, 566 U.S. 134, 148 (2012)).

The undersigned has reviewed the trial transcript whereby the State outlined each plea offer it provided to Banks and noted that Banks' attorney provided each plea offer to him and that Banks rejected each one. [doc. # 12-3 at 499-500]. Banks' counsel confirmed that he notified his client of all four of the plea offers and that each one was rejected. (*Id.* at 500). Banks has failed to provide any facts to prove that his counsel did not fully discuss the terms of the plea offers with him or that his counsel provided him with inadequate information. His claim rests in part on the fact that the trial court addressed his counsel and not him, but this does not prove that counsel's performance was deficient.

In its ruling on Banks' application for post-conviction relief, the state court reviewed the record and denied this claim, finding that Banks rejected the plea offers on the basis of his innocence, and not upon inadequate advice of counsel. [doc. # 12-6 at 77]. Banks has failed to

provide clear and convincing evidence that the state court's factual determination is incorrect, as required under 28 U.S.C. § 2254(e)(1). The record reflects that Banks decided not to accept the plea offer because he maintained his innocence. Banks testified at trial and asserted his innocence, stating he was not present when Dorsey was kidnapped. [doc. # 12-5 at 849-54]. Further, in his brief, Banks claims he "maintained his innocence through-out the trial." (Mem. at 32). Thus, even if counsel's advice was inadequate, Banks has not shown that, but for counsel's error, he would have pleaded guilty. His ineffective assistance of counsel claim is therefore without merit.

Accordingly, this claims should be **DISMISSED**.

D. Failure to Object to the Trial Court's Erroneous Jury Instruction that Lacked the Element of Criminal Intent

Banks claims that his trial counsel was ineffective in failing to object to the trial court's erroneous instructions on the offenses of second degree kidnapping, first degree robbery, and aggravated second degree battery because the trial court did not include an instruction on criminal intent at the same time. (Mem. at 35-36). The State responds that the trial court did instruct the jury on specific and general intent, and the elements of the crimes, each of which is a general intent crime. (Opp. Mem. at 33).

As discussed above, *see supra* Part VI.A., the trial court did instruct the jury as to criminal intent. Viewing the jury charge as a whole, the trial court did not provide erroneous instructions. Therefore, Banks' claim that his trial counsel was ineffective in failing to object to the jury charge is without merit. Any objection by Banks' counsel would have been futile.

Accordingly, this claim should be **DISMISSED**.

E. Failure to Object to the Trial Courts Failure to Charge the Jury on Circumstantial

24

<u>Evidence</u>

Banks claims that his trial counsel was ineffective for failing to object to the trial court's erroneous instruction concerning circumstantial evidence. (Mem. at 37-38). The State responds that the jury instructions were correct, and any error was harmless given that the majority of evidence in this case was direct evidence. (Opp. Mem. at 34-35).

As discussed above, *see supra* Part V, Banks has not shown that the trial court erred in instructing the jury concerning circumstantial evidence. The jury instructions contain correct statements of law and do not relieve the State of its burden of proof. Therefore, trial counsel's failure to object does not constitute deficient performance under *Strickland*.

Accordingly, this claim should be **DISMISSED**.

## <u>Conclusion</u>

For the reasons state above, **IT IS RECOMMENDED** that the petition for habeas corpus filed by Petitioner Joey Banks [doc. # 1] be **DENIED** and **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Report and Recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before the Judge makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

In Chambers, Monroe, Louisiana, this 31st day of October, 2018.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE